## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION,<br><br>*Plaintiff*,<br><br>v.<br><br>JOCELYN BENSON, in her official capacity as Michigan Secretary of State,<br><br>*Defendant*. | Case No.: _____<br><br>**Complaint for Declaratory and Injunctive Relief** |

Plaintiff Public Interest Legal Foundation (the "Foundation") brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), as the action seeks injunctive and declaratory relief under the NVRA.

2. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### PARTIES

3. The Public Interest Legal Foundation, Inc., (the "Foundation") is a non-partisan, public interest organization incorporated and based in Indianapolis, Indiana. The Foundation seeks to promote the integrity of elections in Michigan and other jurisdictions nationwide

through research, education, remedial programs, and litigation. The Foundation regularly utilizes 52 U.S.C. § 20507(i) and state and federal open records laws that require government records be made available to the public. Using records and data compiled through these open records laws, the Foundation analyzes the programs and activities of state and local election officials in order to determine whether lawful efforts are being made to keep voter rolls current and accurate. The Foundation also uses records and data to produce and disseminate reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission.

4. Defendant Jocelyn Benson is the Michigan Secretary of State. Secretary Benson is the chief election officer of Michigan for the purposes of the NVRA. Mich. Comp. Laws Ann. §168.21.

5. Under 52 U.S.C. § 20507(i), Secretary Benson "shall maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision").

6. Secretary Benson is a custodian of the requested records.

## BACKGROUND

7. This is a public records case. The Foundation requested access to records that federal law entitles the Foundation to inspect and photocopy. The records requested are voter history records for a small subset of registrants in Southfield, Michigan. Southfield City Clerk Sherikia Hawkins allegedly created one voter history record for a subset of Southfield voters indicating that they did not vote in the 2018 election in order to nullify the effect of those

registrants casting an absentee ballot. In creating a voter history record indicating that the registrant *did not* vote, it allowed Hawkins to (allegedly and falsely) disregard and not count the absentee ballots of those voters. When the actions of Hawkins were discovered, yet another voter history record was allegedly created, a truthful one indicating that the voters indeed did cast an absentee ballot. The Foundation merely requests these voter history records as they will indicate the registrants who sent voted absentee ballots to Hawkins and for whom Hawkins has been charged with cancelling their vote. Because voting history data are used to maintain Michigan's official list of eligible voters, the requested records are list maintenance records which must be disclosed under federal law. Secretary Benson is denying the Foundation access to the requested records.

**Alleged Alteration of List Maintenance Records Concerning the 2018 Election**

8. On September 23, 2019, Secretary Benson and Michigan Attorney General Dana Nessel announced that six felony charges had been filed against the Southfield City Clerk Sherikia Hawkins. Press Release, Michigan Attorney General, AG Nessel Charges Southfield City Clerk With Six Felonies (Sept. 23, 2019), *available at* https://www.michigan.gov/ag/0,4534,7-359-92297_92299-508151--,00.html (last accessed August 26, 2020).

9. According to probable cause affidavits filed by prosecutors, Southfield City Clerk Hawkins allegedly altered the Qualified Voter File (QVF) records of 193 absentee voters in the November 2018 General Election. Michigan State Police (2019-09-23), *People v. Sherikia Lavette Hawkins*, Felony Complaint, *available at* https://www.michigan.gov/documents/ag/2019-09-23_1_666447_7.pdf (last accessed August 26, 2020).

10. Specifically, the court documents state in relevant part:

12. When an absentee ballot arrives into a clerk's office it is logged into the Qualified Voter File (essentially on (sic) online poll book). The clerk checks to make sure it is valid (i.e. signed, signature matches, etc.).

13. The ballots are then counted on election day by running them through the tabulator. The number of ballots counted (run through the tabulator) needs to be equal to the number of ballots logged into the Qualified Voter File (poll book).

14. If they do not match, a clerk may need to re-run all the ballots for the entire precinct through the machine. If those numbers still do not match, the city clerk would submit the paperwork to the county clerk. The county clerk's office along with the board of canvassers will conduct a canvass of that precinct to determine why it is out of balance.

15. Affiant was advised that on November 9, 2019, Oakland County Election Director, Joseph Rozell, contacted Clerk Hawkins[,] attempted to start certifying Southfield's absentee precincts, and contacted Hawkin's (sic) when he noticed that ballot summary sheets were blank.

…

20. Hawkins delivered the ballot summary sheets on November 15, 2019 along with a new list of voters for each absentee precinct from the QVF. Those revised reports had not been requested by Oakland County Election Director.

…

22. It appears that Hawkins had switched out her original reports with the altered reports.

23. Affiant was advised that Rozell requested his staff look for the original reports provided by Hawkins. The reports were discovered in a trash can at the election division office in Pontiac.

…

30. Affiant performed a desk review with the help of Rozell and of all the ballots in question. 193 absentee voters QVF were altered in the computer system to no signature or no return date when a valid signature and a valid return date in fact existed.
…

33. For the reasons stated herein there is probable cause to believe that Sherikia Hawkins committed Election Fraud during the November 2018 election, forged

>   false election records, used her computer to commit these crimes, and used her
>   office as clerk to enable her to fraudulently alter those records.

*Id*. at 6-7.

**The Foundation Sought and Was Denied Access to List Maintenance Records Concerning the 2018 Election**

11. On September 26, 2019, the Foundation made a request to the City of Southfield City Clerk's office pursuant to the NVRA, 52 U.S.C. § 20507(i), and the Michigan Freedom of Information Act (FOIA), MCL § 15.231 *et seq*. The Foundation sought records concerning the official activities of the City of Southfield with respect to absentee voters and the announced criminal charges against Southfield City Clerk Hawkins. Exhibit A at 14.

12. With regards to the Foundation's requests for records relating to the 193 absentee voters whose votes were impacted by the alleged alterations of Clerk Hawkins, the City indicated that it transferred all responsive records to the Attorney General of Michigan. *See* Exhibit A at 5, 8-9.

13. On November 6, 2019, the Foundation notified the City of Southfield and Secretary Benson that the City of Southfield was in violation of the NVRA for failure to permit inspection and duplication of public records as required by 52 U.S.C. 20507(i). Exhibit A at 4-7.

14. The Foundation continued its attempts to inspect records in Southfield but was told that certain records were no longer in Southfield's possession. Exhibit A at 8-13.

15. On March 5, 2020, the Foundation requested to inspect records in Secretary Benson's possession pursuant to the NVRA. Exhibit A at 1. Specifically, the Foundation sought "All records concerning the 193 absent voters impacted by Clerk Hawkins' alleged alterations to their QVF records for the November 2018 General Election." *Id*.

16. The Foundation informed Secretary Benson that it arranged for a representative to visit her office on March 13, 2020. Exhibit A at 3.

5

17. On March 12, 2020, Adam Fracassi from the Michigan Department of State emailed the Foundation stating that the records would **not** be available on March 13, 2020. Exhibit B. Mr. Fracassi stated that a response would be provided by March 26, 2020. *Id*.

18. On April 15, 2020, the Foundation wrote to Secretary Benson stating that it had not received a response to its request. Exhibit C. The Foundation requested a response by April 22, 2020. *Id*.

19. On April 22, 2020, the Michigan Department of State provided a response to the Foundation denying its request to inspect records pursuant to the NVRA. Exhibit D ("NVRA Denial").

20. The NVRA Denial stated that the requested records are not "voter *registration* or voter registration *cancellation* records required to be produced under the NVRA – the vehicle through which this request is submitted." Exhibit D at 2.

21. As a result, Secretary Benson did not allow the Foundation to inspect *any* records responsive to its request.

22. Pursuant to the NVRA, "A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1).

23. On April 23, 2020, the Foundation notified Secretary Benson that she was in violation of the NVRA for failure to permit inspection and duplication of public records as required by 52 U.S.C. § 20507(i). Exhibit E.

24. The Foundation explained that voter history data are critical list maintenance records because voting (and failing to vote) will trigger various events under the NVRA that may lead to a registration being cancelled, or not cancelled. Exhibit E.

25. Under the NVRA, "If the violation is not corrected within 90 days after receipt of a notice under paragraph (1)…the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." 52 U.S.C. § 20510(b)(2).

26. It has now been almost 11 months since the Foundation first requested access to public voter list maintenance records from the City of Southfield and over 5 months since it requested access from Secretary Benson.

27. It has now been over **120 days** since Secretary Benson received notice that she is in violation of the NVRA for not allowing the Foundation to inspect the requested records.

28. The Foundation has spent considerable time and financial resources in an effort to obtain the requested records without the need for judicial intervention.

29. Despite those efforts, Secretary Benson is denying the Foundation's request for inspection of records pursuant to the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i).

30. The Public Disclosure Provision is far more than a federal freedom of information law. Rather, upon request, election administration officials must "make available for public inspection . . . *all records* concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added).

31. The Public Disclosure Provision confers on the Foundation and every individual "a public right to information." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 703 (E.D. Va. 2010). "[A] statutory right to information is substantive" in kind, *Landrum v. Blackbird Enters.*, LLC, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016), and thus a violation of that right creates an informational injury sufficient to establish Article III standing, *FEC v. Akins*, 524

U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute").

32. Courts have found that the Public Disclosure Provision is to be interpreted broadly, explaining that the NVRA's "use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012) (internal citations omitted). The Public Disclosure Provision's "language embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Id*. at 334-35. Accordingly, "the NVRA requires disclosure of *all* materials described in Section 8(i)(1)." *Id*. at 337 (emphasis added).

33. As was articulated by the Southern District of Florida, Congress intended that the NVRA's inspection rights would allow the public to monitor the activities of government as they concern the right to vote:

> [The NVRA's Public Disclosure Provision is] available to any member of the public … and convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. [52 U.S.C. § 20507(i)]. Accordingly, election officials must provide full public access to all records related to their list maintenance activities, including their voter rolls. *Id*. This mandatory public inspection right is designed to preserve the right to vote and ensure that election officials are complying with the NVRA. *Project Vote v. Long*, 682 F.3d. 331, 335 (4th Cir. 2012).

*Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12-13 (S.D. Fla. Mar. 30, 2018).

34. According to another court, "to the extent [Defendant] maintains records concerning implementation of its list maintenance activities . . . [it] is required to make such records available for public inspection." *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 n.5 (E.D.N.C. 2017).

35. Secretary Benson is not complying with the NVRA's Public Disclosure Provision. By denying the Foundation access to the requested records, Secretary Benson is causing a concrete injury to the Foundation in violation of the Foundation's right to information conferred by the NVRA and is frustrating the Foundation's organizational mission. To remedy its ongoing injury, the Foundation seeks declaratory and injunctive relief from this Court. Specifically, the Foundation seeks a declaration that the requested records are subject to public inspection under the NVRA. The Foundation also seeks an order compelling Secretary Benson to comply with the NVRA's Public Disclosure Provision through an order commanding Secretary Benson to permit inspection and duplication of all requested records in her actual and constructive possession.

36. The NVRA's Public Disclosure Provision provides:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1); *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d at 337 ("First, the statute clearly states that '*all* records' falling under Section 8(i)(1) must be publicly disclosed, not just those explicitly listed in Section 8(i)(2)") (emphasis in original).

37. The only records exempted from the NVRA's Public Disclosure Provision are "records relate[d] to a declination to register to vote or the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1).

38. The NVRA's civil enforcement provision allows for a private right of action by any person "aggrieved by a violation," after providing, if necessary, "written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b).

> If the violation is not corrected within 90 days after receipt of a notice . . . the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

52 U.S.C. § 20510(b)(2).

39. A person is "aggrieved" by a violation of the Public Disclosure Provision if the person is denied access to records to which he is entitled under the NVRA. The Foundation is thus an "aggrieved" person under the law.

**Michigan Uses Voting History Data to Maintain its Official List of Eligible Voters**

40. Both the NVRA and Michigan law require election officials to remove someone from the voter roll if they have not responded to an address confirmation notice and not voted in two consecutive general elections. 52 U.S.C. § 20507(d)(1)(B)(i)-(ii); MCL § 168.509aa(4).

41. Specifically, following reliable information that a registrant has moved and the mailing of confirmation notices regarding the same, Michigan law directs the clerks to cancel a registration "[i]f the person does not appear to vote in an election within the period beginning on the date of the notice and ending on the first business day immediately following the second November general election that is held after the date of the notice." MCL § 168.509aa(4).

42. Thus, the voting history records that Secretary Benson is withholding are part of the process of identifying whether a registrant should or should not be removed from the rolls. The voting history records are essential to conduct list maintenance and thus are list maintenance records subject to disclosure under the NVRA.

43. Records recording whether or not a registrant voted, in this case by absentee ballot in Southfield, are therefore records that "concern[] the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i). Those records must be maintained for at least two years and must be made available for public inspection. *Id*.

**Secretary Benson Is Violating the NVRA by Refusing to Provide Inspection of the Requested Records**

44. The records requested from Secretary Benson are records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. . . ." 52 U.S.C. § 20507(i)(1).

45. Under the NVRA, Secretary Benson is obligated to make the requested records available for public inspection and photocopying. *Id*.

46. Secretary Benson has not done so and is therefore in violation of law. 52 U.S.C. § 20510.

47. Secretary Benson's violation of the NVRA is ongoing. The Foundation notified Secretary Benson that she was in violation on April 23, 2020. Pursuant to 52 U.S.C. § 20510(b)(2), Secretary Benson had 90 days to cure the violation. The Secretary has not done so and the notice requirement has been satisfied.

**Secretary Benson's Violation of the NVRA is Harming the Foundation and the Public**

48. "[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998). The Foundation is suffering a clear informational injury as a direct result of the Secretary Benson's violations of the NVRA because Secretary Benson has denied the Foundation access to the records to which it is entitled under the law. This injury is ongoing.

49. Secretary Benson's actions have also frustrated and harmed the Foundation's organizational mission.

50. As an integral part of its public interest mission, the Foundation gathers and disseminates information about compliance by state and local officials with federal election statutes, including election integrity statutes.

51.     The activities of Southfield Clerk Hawkins, who remains the City Clerk of Southfield, are of public interest both to the people of Michigan and nationwide.

52.     The Foundation publicizes its work through media and press sources. Representatives of the Foundation appear on national television programs and in widely circulated newspapers of record to discuss matters involving elections. By denying the Foundation access to the requested records Secretary Benson has impaired and will impair the Foundation from carrying out its mission.

53.     A central activity of the Foundation is to promote election integrity and compliance with federal and state statutes that are designed to improve the accuracy of voter rolls across the country. The Foundation relies on list maintenance records—like those being withheld by Secretary Benson—to engage in those activities. The Secretary Benson's violations of NVRA have impaired and will impair the Foundation from carrying out this its mission.

54.     The failure of the Secretary Benson to comply with its obligations under the NVRA has also undermined the confidence of Michigan's properly registered voters in the integrity of the voter registration rolls, and, accordingly, has undermined the integrity of elections held across the State of Michigan.

55.     Secretary Benson has not cured her violation of the NVRA.

56.     Secretary Benson's failure to permit inspection and duplication of the requested records pursuant to the NVRA is causing the Foundation to suffer an informational injury and has further frustrated, impeded and harmed the efforts of the Foundation.

57.     The Foundation has expended substantial resources, including staff time, to obtain the requested records and to improve the accuracy of voter rolls across Michigan. *See Pub. Interest Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 455-56 (M.D. Pa. 2019).

58. The Foundation is a person aggrieved by a violation of the NVRA, as set forth in 52 U.S.C. § 20510(b)(1).

## COUNT I

### Violation of the NVRA
### Failure to Permit Inspection and Duplication of List Maintenance Records

59. Plaintiff realleges paragraphs 1 through 58 as if fully stated herein.

60. Defendant has failed to permit inspection and duplication of records concerning Defendant's implementation of programs and activities conducted to ensure the accuracy and currency of the official lists of eligible registrants, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(i).

61. Defendant has not cured her violation of law within the 90-day period afforded her by the NVRA. 52 U.S.C. § 20510(b)(2).

62. Plaintiff is suffering an informational injury as a direct result of Defendant's violations of Section 8 of the NVRA because the Plaintiff does not have the data and records requested. The NVRA confers upon Plaintiff a right to information, and by denying that information to the Plaintiff, the Defendant has caused a concrete injury to the Plaintiff.

63. Plaintiff will continue to be injured by the Defendant's violations of Section 8 of the NVRA unless and until the Defendant are enjoined from continuing to violate the law.

64. Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant is in violation of Section 8 of the NVRA;

2. Declaring that Section 8(i) of the NVRA preempts and supersedes any requirement or restriction in any Michigan statute, regulation, practice or policy that prevents the

Foundation from inspecting and copying the requested list maintenance records or that places restrictions on the use of the list maintenance records;

3. Ordering the Defendant to provide to the Plaintiff the records concerning the implementation of programs and activities to ensure the accuracy and currency of voter registration lists;

4. Permanently enjoining the Defendant from denying requests to inspect similar list maintenance records in the future;

5. Ordering the Defendant to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and

6. Granting Plaintiff further relief that this Court deems just and proper.


Dated: August 26, 2020.

Respectfully submitted,


   /s/ Kaylan Phillips
Kaylan Phillips
Public Interest Legal Foundation
32 E. Washington Street, Ste. 1675
Indianapolis, IN 46204
Telephone: (317) 203-5599
kphillips@publicinterestlegal.org
*Counsel for Plaintiff*